UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| JONES LANG LASALLE | * |
| NEW ENGLAND, LLC, | * |
| | * |
| Plaintiff, | * |
| | *  Civil Action No. 1:17-cv-11784-IT |
| v. | * |
| | * |
| 350 WALTHAM ASSOCIATES, LLC, | * |
| and 358 WALTHAM ASSOCIATES, LLC, | * |
| | * |
| Defendants. | * |

MEMORANDUM AND ORDER

January 27, 2020

TALWANI, D.J.

Plaintiff Jones Lang LaSalle New England, LLC ("Jones Lang"), a broker, brought suit seeking a brokerage commission in connection with amendments to a commercial lease between Defendants 350 Waltham Associates, LLC, and 358 Waltham Associates, LLC (collectively, "Waltham Associates"), as landlord, and non-party Foster-Miller, Inc. d/b/a QinetiQ North America ("QinetiQ"), the tenant. Pending before the court are Defendants' Motion to Amend Answer to Assert Counterclaims [#32], Motion for Leave to Bring Third Party Complaint [#39] against QinetiQ, and Motion for Summary Judgment [#42], in which Defendants assert that the lease amendments' terms as to the brokerage commission are not valid and binding because they were procured by fraud or because there was no meeting of the minds. For the following reasons, Defendants' motions are DENIED.

I. Procedural History

Defendants removed this action from state court in September 2017, Notice of Removal [#1], and filed their Answer [#10] in October 2017. The court adopted the parties' proposed fact

discovery deadline of September 28, 2018. Joint Statement [#13]; Elec. Clerk's Notes [#16]; Am. Scheduling Order [#24]. The court subsequently allowed the parties' joint motion to extend fact discovery to November 5, 2018, Elec. Order [#26], and expert discovery to March 11, 2019. Elec. Clerk's Notes [#29]; Joint Mot. for Extension of Time [#30]; Elec. Order [#31].

Beginning well after the close of fact discovery and three days before the close of expert discovery, Defendants filed the pending motions.[1] Plaintiff opposes all pending motions, and QinetiQ opposes the motion seeking leave to file a third-party complaint.

II.     Factual Background

The following facts are drawn from the summary judgment record.

In 2007, QinetiQ entered into a ten-year lease agreement with Defendants to rent buildings located at 350 Second Avenue and 358 Second Avenue in Waltham, Massachusetts. Pl.'s SOF ¶ 1 [#60]; Defs.' Ex. 4 - 2007 Lease Agreement [#44-4]. The brokers who worked on the agreement were paid a commission of 2% of the total rent, evenly split. Pl.'s SOF ¶ 1 [#60].

In 2015, brokers for Defendants and QinetiQ began negotiating lease renewal. Id. ¶¶ 2-3 [#60]; Defs.' Ex. 6 - Oct. 28, 2015 Email [#44-6]. Arthur Amadei of RW Holmes acted on behalf of Defendants and William Bailey of Jones Lang acted on behalf of QinetiQ. Pl.'s SOF ¶¶ 2-3 [#60].

On March 30, 2016, Jones Lang sent a draft Request for Proposal ("March RFP") to QinetiQ for approval. Pl.'s SOF ¶ 4 [#60]; Defs.' Ex. 7 - March RFP [#44-7]. The RFP included a section titled "Brokerage" that read:

---

[1] Defendants also filed a Motion for Leave to Bring Third Party Complaint [#33] against QinetiQ on March 8, 2019. The court denied the motion without prejudice for failing to certify advance notice to QinetiQ as required by Local Rule 15.1(b). Elec. Order [#34]. Defendants refiled the motion with the required certification two weeks later.

> [QinetiQ] is exclusively represented by Jones Lang LaSalle Real Estate Services, Inc., ('Broker'). [QinetiQ] requires Landlord to enter into a separate agreement with Broker, under which Landlord agrees to pay a real estate commission equal to a $1.00 per square foot per year of lease term, or partial year, at the time of Lease execution for all premises."

Pl.'s SOF ¶ 4 [#60]. On March 31, 2016, Jones Lang, with the approval of QinetiQ, sent the same RFP to Amadei. Id. ¶ 6; Affidavit of Daniel Barton ("Barton Aff.") ¶ 5 [#62]. Amadei requested a meeting in response. Pl.'s SOF ¶ 7 [#60].

Amadei, Bailey, and corporate representatives from Defendants and QinetiQ met on May 9, 2016. Id. ¶ 10; Defs.' Ex. 13 – Defs.' Answer to Pl.'s First Set of Interrogs. ¶ 7 [#44-13]. Defendants' representative, William Achenbaum, rejected the March RFP and stated that Defendants would not pay the proposed commission to Jones Lang. Pl.'s SOF ¶ 10 [#60].

Around the same time, Jones Lang negotiated a Services and Compensation Agreement ("Services Agreement") with QinetiQ. Id. ¶¶ 9, 12-14. In the Services Agreement, Jones Lang and QinetiQ agreed that Defendants would be responsible for any commission to Jones Lang if QinetiQ renewed its leases, but if Defendants refused to pay a commission, QinetiQ would pay a fee of $326,589 to Jones Lang. Id. ¶ 15. Jones Lang and QinetiQ executed the Services Agreement on July 14, 2016. Id. ¶ 16; Pl.'s Ex. C - Services and Compensation Agreement ¶ 4 [#61-3].

On July 22, 2016, Jones Lang emailed Amadei a new RFP ("July RFP") which included the following language in the "Brokerage" section:

> [QinetiQ] is exclusively represented by Jones Lang LaSalle Real Estate Services, Inc., ("Broker"). Please clearly state the Landlord's position on the payment of a real estate commission equal to a $1.00 per square foot per year of lease term or partial year, at the time of Lease document execution for all premises to Broker. Said commission shall not be added as separate and incremental cost to the tenant.

3

Pl.'s SOF ¶ 17 [#60]; Defs.' Ex. 24 - July RFP [#44-24]. Amadei responded on August 3, 2016, with a proposal to split a brokerage fee of $1,000,000 between Amadei's company and Jones Lang. Pl.'s SOF ¶ 21; Defs.' Ex. 25- Aug. 3, 2016 Proposal [#44-25].

QinetiQ began to negotiate directly with Defendants on August 18, 2016, without including the brokers. Pl.'s SOF ¶ 22 [#60]; Defs.' Ex. 1 – Dep. of William Bailey 98:2-98:23 [#44-1]. The negotiations continued throughout August and September. Pl.'s SOF ¶¶ 23, 26-27 [#60].

Defendants sent Jones Lang a proposal on September 21, 2016, which stated that the brokerage commission "shall be paid to [Jones Lang] and RW Holmes (Arthur Amadei) as per the standard for the Waltham/Boston area for renewals." Pl.'s SOF ¶ 30 [#60]; Defs.' Ex. 32 – Sept. 21, 2016 Proposal [#44-32]. Jones Lang did not accept the agreement. Pl.'s SOF ¶ 31 [#60].

On September 28, 2016, Defendants sent to QinetiQ draft Lease Amendments that stated in the "Brokerage" section:

> The parties agree that [Jones Lang] and RW Holmes (Arthur Amadei) are the sole brokers which brought about this transaction and shall be paid as per the standard for a renewal of a lease in the Waltham/Boston area.

Id. ¶ 33-34; Defs,' Ex. 37 – Sept 28, 2016 Proposal [#44-37]. QinetiQ countered with an additional sentence that "[t]he Landlord agrees to pay said brokers all commissions due to them." Pl.'s SOF ¶ 35 [#60]; Defs.' Ex. 41 – Sept. 29, 2016 Proposal [#44-41].

Defendants and QinetiQ executed the Lease Amendments on September 29, 2016. Pl.'s SOF ¶ 62 [#60]; Pl.'s Ex. K - First Amendment to Lease, 350 Second Ave. [#61-11]; Pl.'s Ex. L - First Amendment to Lease, 358 Second Ave. [#61-12]. Each Lease Amendment included brokerage commission language stating that the commission would be "paid as per the standard

4

for a renewal of a lease in the Waltham/Boston Area," and that Defendants agreed to pay the brokers all commissions due to them. Pl.'s Ex. K - First Amendment to Lease, 350 Second Ave. [#61-11]; Pl.'s Ex. L - First Amendment to Lease, 358 Second Ave. [#61-12].

Once the lease amendments were signed, Jones Lang submitted an invoice to Defendants for $880,689.60, representing a brokerage fee of $1.20 per square foot, and stating that Jones Lang believed this to be the standard market commission. Id. ¶ 38; Defs.' Ex. 47 - Invoice [#44-47]. Defendants did not pay the invoice, and instead offered to pay a commission of $170,303.15 to Jones Lang, which was half of 2.5% of the annual lease rent. Pl.'s SOF ¶ 66 [#60]; Pl.'s Ex. Q - Oct. 27, 2016 Email from Amadei to Bailey [#61-17]. Jones Lang rejected Defendants' offer. Pl.'s SOF ¶ 67 [#60]; Pl.'s Ex. R - Oct. 27, 2016 Email from Bailey to Amadei [#61-18].

### III. Analysis

#### A. Motion to Amend Answer

Under Fed. R. Civ. P. 15(a), leave of court is required to amend an answer more than 21 days after service. While leave shall be given freely "when justice so requires," Fed. R. Civ. P. 15(a)(2), the court will not "mindlessly grant every request." Aponte-Torres v. Univ. of P.R., 445 F.3d 50, 58 (1st Cir. 2006). The court must consider factors such as "undue delay, bad faith, dilatory motive of the requesting party, repeated failure to cure deficiencies, and futility of amendment." Hagerty ex rel. United States v. Cyberonics, Inc., 844 F.3d 26, 34 (1st Cir. 2016). As a case progresses, the burden on the party seeking to amend a pleading "becomes more exacting." Steir v. Girl Scouts of the USA, 383 F.3d 7, 12 (1st Cir. 2004). The movant has the burden to of showing a valid reason for delay. Hayes v. New England Millwork Distribs., Inc., 602 F.2d 15, 19-20 (1st Cir. 1979).

5

Defendants seek to amend their answer for two purposes: 1) to add an affirmative defense of fraud; and 2) to bring counterclaims against Plaintiff alleging fraud. Defs. Mot. to Amend 13 [#32]. Defendants state that they did not learn of the facts that they contend give rise to their additional claims and defense until November 1, 2018.

Accepting for the purposes of this motion that Defendants did not learn the facts on which they rely until November 1, 2018, the motion is still untimely. Despite fact discovery closing on November 5, 2018, Defendants acted with no haste. Defendants did not raise the issue at the December 2018 status conference. When the parties moved jointly on February 5, 2019, to extend expert witness depositions until March 11, 2019, see Joint Motion [#30], Defendants again made no mention of the new claims and defense. Instead, Defendants waited four months before filing this motion. Under Rule 15, the untimeliness of this motion is sufficient to deny the motion. Hagerty, 844 F.3d at 34.

Even if Defendants' motion had been timely, the amendment is futile. Defendants allege that Jones Lang committed fraud by misrepresenting in the March RFP provided to Defendants that QinetiQ "required Landlord to enter into a separate agreement with Broker, under which Landlord agrees to pay a real estate commission equal to a $1.00 per square foot per year of lease term, or partial year, at the time of Lease execution for all premises," when QinetiQ had no such requirement. Defendants assert further that having made this misrepresentation, Jones Lang had a duty to disclose its subsequent Services Agreement with QinetiQ, and QinetiQ's statement to Jones Lang that lease renewal was not a "commissionable event." Mot. to Amend Answer to Assert Counterclaims 14-15 [#32].

In order to establish fraud in the inducement of a contract, however, a party must show that the allegedly false statement was material to its decision to execute the contract. Turner v.

6

Johnson & Johnson, 809 F.2d 90, 95 (1st Cir. 1986). Here, Defendants did not agree to the March RFP, and instead unequivocally rejected it. Pl.'s SOF ¶ 10 [#60]; Defs.' Ex. 13 – Defs.' Answer to Pl.'s First Set of Interrogs. ¶ 7 [#44-13]. Having rejected the RFP, Defendants have no grounds for their claims that the statement was a material misstatement or that Jones Lang was obligated to provide Defendants with the terms of its subsequent agreement with QinetiQ. Moreover, the RFP presented by Jones Lang in July made no assertion restating the objectionable statement from March and instead asked for Defendants' position on the payment of a brokerage commission. Pl.'s SOF ¶ 20 [#60]; Defs.' Ex. 24 - July RFP [#44-24].

Nor can Defendants show how the statement in the March RFP was material to the Lease Amendments signed by Defendants and QinetiQ in September. The record indicates that the parties engaged in arms-length negotiations driven by the desire to win cost concessions from the other side. Over six months of negotiations, Defendants consistently rejected Jones Lang and QinetiQ's proposals, and proposed multiple alternatives of their own. See Pl.'s SOF ¶¶ 21, 27, 30, 33, 36 [#60]. In the end, it was Defendants who proposed using the language of a "standard" commission, Pl.'s SOF ¶¶ 30, 33 [#60]; Defs.' Ex. 32 – Sept. 21, 2016 Proposal [#44-32]; Defs.' Ex. 37 – Sept. 28, 2016 Proposal [#44-37], and QinetiQ (not Jones Lang) who insisted to Defendants that they pay the brokerage commission. Defs.' Ex. 41 – Sept. 29, 2016 Proposal [#44-41].[2] As such, Defendants' claims that the September Lease Amendments was entered into because of fraud in connection with the rejected March RFP is futile.

---

[2] Defendants' principal, William Achenbaum, stated in a deposition that he was prepared to pay a "standard" brokerage commission. Pl.'s Ex. B – Achenbaum Depo. at 243:3-13 [#61-2]. The statement provides another indication that Defendants did not rely on the March RFP when drafting the language that ended up in the final agreements.

In sum, Defendants' Motion to Amend Answer to Assert Counterclaims [#32] is DENIED as untimely. The proposed amendment is also futile.

B. Motion to Bring Third Party Complaint

Defendants' Motion for Leave to Bring Third Party Complaint [#39] under Fed. R. Civ. P. 14 faces even greater problems of untimeliness. Timeliness is a factor that a court must consider under 14(a)(1). Lehman v. Revolution Portfolio LLC, 166 F.3d 389, 393 (1st Cir. 1999). Defendants seek to bring QinetiQ into this case as a third-party defendant after the close of fact and expert discovery. Allowing Defendants to proceed against QinetiQ would require reopening both fact and expert discovery. And as with their Motion to Amend, Defendants did not act with haste once they learned the facts on which they now rely, waiting instead more than four months before filing the motion.

Defendants' assertion that their claims against QinetiQ are "derivative" claims is also misplaced. A "derivative" claim under Rule 14 must not only be a related claim but must be "derivatively based on the original plaintiff's claim." United States v. One 1977 Mercedes Benz, 708 F.2d 444, 452 (9th Cir. 1983). Therefore, Rule 14 is properly limited to complaints where the third-party is alleged to be liable, in part or in whole, for the claim that the original plaintiff brought against the original defendant. 6 C. Wright & Miller, Federal Practice and Procedure § 1446 (2019). ("The crucial characteristic of a Rule 14 claim is that defendant is attempting to transfer to the third-party defendant the liability asserted against the defendant by the original plaintiff."). See also Venuti v. Riordan, 702 F.2d 6, 9 (1st Cir. 1983) (considering "what law made the [third-party defendant] liable to [third-party plaintiff] for all or part of the plaintiff's claim against it") (quoting Fed. R. Civ. P. 14(a)(1)) (quotation marks omitted).

Here, however, Defendants are not alleging that QinetiQ is potentially liable for the claims Jones Lang has brought against Defendants. Instead, Defendants are asserting independent claims of fraud in the inducement of a contract. While the amount of damages at issue may turn on whether Jones Lang prevails on its claims against Defendants, liability based on QinetiQ's alleged fraud is not a derivative claim.

Finally, Defendants are not prejudiced by the denial of their motion. The claims that Defendants seek to bring – independent claims alleging QinetiQ induced Defendants into entering a contract through fraud – are not compulsory counterclaims that will be lost if not asserted here.

Accordingly, Defendants' <u>Motion for Leave to Bring Third Party Complaint</u> [#39] is DENIED.

    C.  Motion for Summary Judgment

        1.  <u>Standard of Review</u>

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court views the evidence in the light most favorable to the non-moving party and resolves any disputes of material fact in their favor. <u>Prescott v. Higgins</u>, 538 F.3d 32, 39 (1st Cir. 2008). A "genuine dispute" is one that, based on the evidence submitted at this stage of litigation, "a reasonable jury could resolve . . . in favor of the non-moving party," and a "material fact" is one that has "the potential to affect the outcome of the suit under the applicable law." <u>Sanchez v. Alvarado</u>, 101 F.3d 223, 227 (1st Cir. 1996) (citations and quotation marks omitted). If further inquiry into the facts is necessary to apply the relevant law, summary judgment is not appropriate. <u>Mandel v. Bos. Phoenix, Inc.</u>, 456 F.3d 198, 205 (1st Cir. 2006).

The moving party is responsible for identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a disputed material fact, the burden shifts to the non-moving party to set forth "specific facts showing there is a genuine issue for trial." Anderson v. Liberty Lobby Inc., 477 U.S. 242, 256 (1986).

2. Plaintiff's Claims

Jones Lang brought seven claims against Defendants: 1) a claim seeking declaratory judgment that Defendants owed a brokerage commission to Jones Lang at the time of contract formation (Count I); 2) Breach of Contract (Count II); 3) Breach of Contract to a Third-Party Beneficiary (Count III); 4) Breach of Covenant of Good Faith and Fair Dealing (Count IV); 5) Quantum Meruit (Count V); 6) Account Annexed (Count VI); and Violations of M.G.L. c. 93A, § 11 (Count VII). Defendants seek summary judgment as to all counts.

The parties do not dispute that, if the brokerage commission clauses in the Lease Amendments between Defendants and QinetiQ are enforceable, Jones Lang was an intended third-party beneficiary. Restatement (Second) of Contracts § 302 ("a beneficiary of a promise is an intended beneficiary if recognition of a right to performance is appropriate to effectuate the intention and . . . (a) the performance of the promise will satisfy an obligation of the promise to pay money to the beneficiary"). As an intended third-party beneficiary, Jones Lang has standing to enforce performance under the contract and to enforce the implied covenant of good faith and fair dealing. Rae v. Air-Speed, Inc., 386 Mass. 187, 195 (1982) ("when one person, for a valuable consideration, engages with another, by simple contract, to do some act for the benefit of a third, the latter, who would enjoy the benefit of the act, may maintain an action for the breach of such engagement.") (quoting Brewer v. Dyer, 7 Cush. 337, 340 (Mass. 1851));

MacKenzie v. Flagstar Bank, FSB, 738 F.3d 486, 491-93 (1st Cir. 2013) (considering whether plaintiffs were third-party beneficiaries in order to evaluate claim of breach of covenant of good faith and fair dealing). However, Defendants assert that the contract is not enforceable, alleging that 1) the contract was induced by fraud; and 2) there was no meeting of the minds as to the brokerage commission clause.

3. Contract Claims -- Fraud Defense

Defendants argue first that the court should enter summary judgment for Defendants as to Plaintiff's contract-based claims because the brokerage commission clause of the lease amendments were induced by fraud. Defendants base their fraud argument on the same alleged conduct raised in their Motion to Amend. The court has found Defendants' attempt to add an affirmative defense of fraud futile, and for these same reasons, Defendants' motion for summary judgment on the grounds of fraud in the inducement is DENIED.

4. Contract Claims - Meeting of the Minds

Defendants next argue that the brokerage commission clause is not binding because there was no meeting of the minds, or mutual assent, as to the meaning of the clause.

In order for a contract to be legally binding, there must be evidence that the parties reached a "meeting of the minds" as to the essential terms at issue. I & R Mech., Inc. v. Hazelton Mfg. Co., 62 Mass. App. Ct. 452, 455 (2004). Generally, the agreed-upon terms must be sufficiently definite to ascertain the meaning of the contract. Hastings Assocs., Inc. v. Local 369 Bldg. Fund, Inc., 42 Mass. App. Ct. 162, 170 (1997) (internal citation omitted). However, if the agreement contains guidelines to allow the factfinder to determine the meaning of an indefinite term, the question is answered by considering the facts of the case. See Simons v. Am. Dry Ginger Ale Co., 335 Mass. 521, 523 (1957) ("[A] contract is not to be held unenforceable if,

11

when applied to the transaction and construed in the light of the attending circumstances, the meaning can be ascertained with reasonable certainty") (quotation marks omitted); Cataldo v. Zuckerman, 20 Mass. App. Ct. 731, 737 (1985) (considering whether the parties signed the contract showing an intention to be bound by the provisions, even though a provision were left for later clarification).

Defendants point to Plaintiff's own statements, near the end of the negotiation period, seeking more clarity as to what the "standard" commission was for the Waltham/Boston area. Defs.' Mot. for Summary Judgment 14 (citing Ex. 39 - Emails from William Bailey [#44-39] and Ex. 44 - Further Emails from William Bailey [#44-44]). The question, however, is not whether there was a meeting of the minds between Defendants and Plaintiff, who is neither a party to the lease amendments nor the party that negotiated the final language, but between Defendants and QinetiQ.

Defendants argue further that there is in fact no standard commission rate for Boston/Waltham and offer their expert's report to show the lack of such a standard. Pl.'s SOF ¶ 39 [#60]; Nahigian Aff. [#45].

In response, Plaintiff contends that there is a standard for the Boston/Waltham area and offers its own expert's report stating that the standard rate for the chosen area is $1.20 per square foot per year of the lease. Pl.'s SOF ¶ 39 [#60] (citing Defs.' Ex. 47 - Invoice [#44-47], Pl.'s Ex. O – Webster Collins Deposition [#61-17], and Pl.'s Ex. P – Plaintiff's Expert Report [#61-18]).

The court need not proceed further as Defendants have not met their burden under Fed. R. Civ. P. 56(a). Whether there is a standard rate for the Boston/Waltham area is a disputed question of fact for the jury.

Accordingly, Plaintiff's contract claims move forward.

4. Plaintiff's Remaining Claims

Plaintiff's remaining claims also all rely on a threshold determination about the validity of the brokerage commission clause, and so summary judgment is not appropriate at this time.

First, Plaintiff has alleged in Count VII that Defendants engaged in unfair practices in violation of M. G. L. c. 93A, § 11A. In order to prevail on a claim under M. G. L. c. 93A, a plaintiff must show (1) that the defendant engaged in an unfair method of competition or committed an unfair or deceptive act or practice, as defined by M. G. L. c. 93A, § 2, or the regulations promulgated thereunder; (2) a loss of money or property suffered as a result; and (3) a causal connection between the loss suffered and the defendant's unfair or deceptive method, act, or practice. Auto Flat Car Crushers, Inc. v. Hanover Ins. Co., 469 Mass. 813, 820 (2014). Misrepresentations of intent to pay can be a violation of the statute. Arthur D. Little, Inc. v. Dooyang Corp., 147 F.3d 47, 51 (1st Cir. 1998).

Defendants argue that there was no deceptive practices as it consistently rejected Jones Lang's brokerage commission proposals and that Jones Lang and QinetiQ were responsible for the delay in resolving the commission issue. Defs.' Mem. in Support of Mot. for Summary Judgment 15-16 [#43].

However, Defendants drafted the language in question, proposing a brokerage commission based on a "standard" rate. Defs.' Ex. 37 – Sept. 28, 2016 Proposal [#44-37]; Pl.'s SOF ¶ 33 [#60]. If a jury finds that there is a "standard" rate, it is unlikely that Plaintiff will have any further basis for proceeding on the 93A claim. But if the jury agrees with Defendants that there is no "standard" rate, and finds further that Defendants sought to reach an agreement on the lease amendment without paying the brokerage commission by proposing a term that Defendants

13

viewed as unenforceable, there may be a violation of § 93A. Again, there are material disputes of fact, and Defendants are not entitled to summary judgment as to this claim.

Similarly, as an intended third-party beneficiary, Jones Lang may assert that Defendants breached the implied covenant of good faith and fair dealing, MacKenzie, 738 F.3d at 491-93, and the assessment of this claim hinges on an analysis of Defendants' intentions when it negotiated and ultimately signed the Lease Amendments. A.L. Prime Energy Consultant, Inc. v. Mass. Bay Transp. Auth., 479 Mass. 419, 434 (2018) (considering whether a party's action "will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract."). As with the 93A claim, questions about Defendants' intentions when proposing the "standard" brokerage commission rest on material disputes of fact. Therefore, summary judgment on Count IV is not warranted.

Finally, Plaintiff's common law tort claims for quantum meruit and account annexed are alternative grounds requiring Defendants to pay a commission even if there is no binding contract. Liss v. Studeny, 450 Mass. 473, 480 (2008) (stating quantum meruit "is a claim independent of an assertion for damages under the contract"); Fraser and Wise, P.C. v. Primarily Primates, Inc., 966 F.Supp. 63, 77 (D. Mass. 1996) (describing a claim for account annexed as the violation of an "implied contract to pay the plaintiffs if they did the work according to the contract").

Defendants argue that no reasonable jury could find for Jones Lang on the quantum meruit claim because Jones Lang did not perform any services for Defendants. In order to prove a quantum meruit claim, a plaintiff must show 1) that it conferred a measurable benefit upon the defendants; 2) that the claimant reasonably expected compensation from the defendants; and 3) the defendants accept the benefit with the knowledge of claimant's reasonable expectations.

14

Finard & Co., LLC v. Sitt Asset Mgmt., 79 Mass. App. Ct. 226, 229 (2011). Here, where Defendants signed a contract that stated that "[Defendants] agree to pay [brokers Jones Lang and RW Holmes] all commissions due to them," a jury may find that Jones Lang reasonably expected compensation from Defendants and that Defendants had knowledge of Jones Lang's reasonable expectations.

This case is similar to Finard, where a tenant's broker alleged that the landlord owed it a brokerage commission and the jury held that quantum meruit was appropriate. Id. at 230. The court found that the jury reasonably determined that the tenant's broker conferred a benefit on the landlord, and therefore, when there was no binding contract, quantum meruit necessitated the payment by the landlord of the commission. Id. Such a finding may be appropriate here. The salient question for the jury is whether Jones Lang conferred a measurable benefit on Defendants.

In considering this question, the terms of the lease amendments may be considered. Liss, 450 Mass. at 480 (stating that "[a] court may look to the terms of the underlying contract to help determine appropriate recovery under quantum meruit."). Here, the lease amendments state that "[t]he parties agree that [Jones Lang] and RW Holmes (Arthur Amadei) are the sole brokers which brought about this transaction . . . . " Pl.'s Ex. K - First Amendment to Lease, 350 Second Ave. ¶ 2(e) [#61-11]; Pl.'s Ex. L - First Amendment to Lease, 358 Second Ave. ¶ 2(e) [#61-12] (emphasis added). Given this language, a jury could find that Jones Lang "brought about" the renewal of the lease and that the lease renewal conferred a benefit upon Defendants. As such, Defendants have not demonstrated that summary judgment is warranted.

As to the account annexed claim, Plaintiff needs to show that there was an implied contract between the parties to pay Plaintiff if it did the work according to the contract. Fraser,

15

966 F.Supp. at 77. A jury could find such an implied contract if the jury finds that the explicit contract is not binding on the parties. In sum, the facts in the summary judgment record do not establish that Defendants are entitled to judgment on these two quasi-contract claims as a matter of law, and summary judgment is denied on these claims as well.

Conclusion

Accordingly, for the previously discussed reasons, Defendants' Motion to Amend Answer to Assert Counterclaims [#32], Motion For Leave to Bring Third Party Complaint [#39], and Motion for Summary Judgment [#42] are DENIED.

IT IS SO ORDERED.

Date: January 27, 2020 /s/ Indira Talwani
United States District Judge